## MARY J. STANTON *vs.* CITY OF SPRINGFIELD.

The mere fact that a highway is slippery from ice upon it, so that a person may be liable to slip and fall upon it while using ordinary care, if the way is properly and well constructed, and there is no such accumulation of ice or snow as to constitute an obstruction, and nothing in the construction or shape of the way which occasions any special liability to the formation or accumulation of ice upon it, is not a defect or want of repair which will authorize a jury to find that it is not safe or convenient for travellers, within the meaning of the statute imposing upon towns the duty to keep their ways safe and convenient for travellers at all seasons of the year.

TORT to recover damages for an injury sustained by reason of a defective highway.

At the trial in the superior court, before *Morton*, J., the plaintiff testified that in the early part of January 1863 she lived in Longmeadow, and on the morning of the day of the injury came to Springfield in the cars, and started on foot to visit her sister in Florence Street, and passed up on the left side of Maple Street, wearing rubber overshoes, and before reaching Mulberry Street the walk was found to be covered with ice, rough and uneven, and after passing that street she fell upon a slippery piece of ice, which sloped from the fence towards the road; that ice and snow were piled up on the outside of the walk, and smooth ice extended across the walk, and she could not tell how far it extended along the walk; that she fell as she stepped on the smooth ice, which was so slippery that her feet came out from under her the moment they touched it, and she struck upon her left hip; that she was walking on the right of the centre of the walk, and the morning was mild and pleasant, but for two or three days before the weather had been cold, rough and windy, but there was no appearance on the walk of there having been any storm recently, and no ashes or sand was on the walk; and that she was using as much care as she could, and saw it was smooth and slippery, and thought she could go safely, and did not know why she could not walk upon it. There was also some other evidence, not inconsistent with the above.

On this evidence, the defendants contended that there was nothing in the case to go to the jury, and the judge ordered

a verdict for the defendants, which was accordingly rendered
The plaintiff alleged exceptions.

*E. D. Beach,* for the plaintiff, cited *Reed* v. *Northfield,* 13 Pick
94 ; *Thompson* v. *Bridgewater,* 7 Pick. 188 ; *Horton* v. *Ipswich*
12 Cush. 488.

*N. A. Leonard,* for the defendants, cited *Wilson* v. *Charles-
town,* 8 Allen, 137 ; *Fallon* v. *Boston,* 3 Allen, 38; *Raymond* v.
*Lowell,* 6 Cush. 533.

HOAR, J.   The correctness of the ruling at the trial, that the
plaintiff had not sustained her action, has been discussed by
counsel chiefly upon the question whether the plaintiff had
proved that she was in the exercise of due care in travelling at
the time she received the injury.   This question, the answer to
which depends upon reported facts which show that it is not
free from difficulty, becomes of no practical importance, because
we do not find that there was any sufficient evidence of the ex-
istence of a defect in the way, upon which any liability of the
defendants could be created.

So far as appears from the report, the only defect which the
plaintiff attempted to show was, that there was a place upon
the sidewalk slippery by reason of the smoothness of the ice
upon it.   There is no proof that the road was so improperly
constructed, or negligently allowed to become in such a condi-
tion, as to be peculiarly liable to cause the formation of ice.
No complaint is made that the snow or ice had not been suffi-
ciently trodden down.   It does not appear that the ice, at the
place where the accident occurred, was so rough or uneven as
to present any obstacle to travel ; or was, by reason of any
improper inclination or steepness of the road, lying at such an
angle as to be likely to trip up passengers or cause them to fall.
The plaintiff testified that the ice sloped from the fence toward
the road, but how much she could not tell.   She did not testify
that it sloped more than the usual slight inclination of a side-
walk toward the gutter; or that her feet slipped in the direction
in which it sloped ; nor was there any evidence that the inclina-
tion of the ice had anything to do with her fall.   The case,
therefore, presents the broad question whether a place in a road

or street, however level and well constructed, upon which ice forms so as to be slippery, is so defective and out of repair that a town or city is responsible for an injury received by a traveller falling upon it, the traveller using ordinary care, and the way being, in the opinion of a jury, not safe and convenient for travel. In other words, is it competent for a jury to find that a way, under such circumstances, is not safe or convenient within the meaning of the statute?

It must be remembered that the statutes which create the liability of towns for defects in highways have been in force, with little variation, from a very early period. The statute of 1693, (Anc. Chart. 268,) is not essentially different from the provisions of the General Statutes. In each the phrase "safe and convenient for travellers" is used to express the condition in which it is required that roads should be kept. In the statute of 1786, *c*. 81, the same language is used, with the additional direction that "when the highways are blocked up or incumbered with snow, the surveyors shall forthwith cause so much thereof to be removed or trod down as will render the roads passable." In the Revised Statutes "safe and convenient" is substituted for "passable," in conformity with the report of the commissioners on revision; but they do not suggest that any change of the law was intended. No other provision in regard to the removal of snow or ice is found in the statutes, until *St*. 1857, *c*. 64, authorized city councils to provide by ordinance for the removal of snow and ice from sidewalks, with suitable penalties for any violation of such ordinance. This statute is incorporated into the General Statutes; but the passage of such ordinances, and the duties which they create, have nothing to do with the general obligation of towns and cities to keep the public ways in repair. This obligation arises from statute provisions which were intended to apply to all the towns in the Commonwealth alike; which were adapted to country roads as much as to streets in populous places; and designed at least as much for ways for horses and carriages as for those used by passengers on foot.

We do not by any means intend to intimate that there may

not be considerations applicable to the streets of cities, which are different from those which apply to the less frequented roads in country towns. The measure of convenience would certainly be different, if not that of safety. But a traveller upon the most solitary country road has the same right to find his path safe, as the traveller in the city street. And if the occurrence of a slippery place in winter constitutes a defect which makes the way unsafe in the one, we can see no reason why it does not in the other. And the same rule would apply to pavements or roads made slippery for horses by snow or ice, or even by rain.

In the opinion of the court it could never have been intended by the legislature to impose upon the towns and cities of the Commonwealth a responsibility so extensive, or that the phrase " safe and convenient for travellers " should receive such an interpretation. It would require of all the towns an examination of all their roads so incessant and minute, and the application of an efficient remedy would be so laborious and expensive, that it would be manifestly unreasonable to require or expect it. The freezing mist of a single night may glaze over the whole territory of a town. The formation of thin but slippery ice in our climate is an effect which may be so suddenly and extensively produced, and which may continue or be renewed for such a length of time, that it would be extremely difficult if not impossible for towns to make adequate provision against it.

There is no question that a way may be defective or out of repair, within the meaning of the statute, by reason of ice or snow upon it. They may be deposited in such masses as to make the way impassable. A block or heap of ice may be an obstru tion, as much as any other object or substance lying in the road. A way may be defective by being so improperly constructed as to induce a special or constant deposit of ice in a particular locality. It may be built at such an angle and so exposed to the formation of ice as to make passing over it in winter especially and usually dangerous. In all of these cases 't will be for the jury, under proper instructions, to decide as a question of fact, whether the way is properly made, and kept in

proper repair. But the phrase "safe and convenient" is not to be construed with such strictness as to apply to the conditions which may arise in all roads from ordinary states of weather, and the usual effects of the climate. For example, a muddy road is not "convenient" to the traveller, in the absolute sense of the word, nor is a dusty road. But roads will be damp after rain, and dusty in times of drought. So they will be slippery in seasons of frost, and when the pavements are wet. These are states of the road produced by natural causes, not depending upon the care or skill with which they have been constructed, and the remedy for the inconvenience is to have the shoes of animals sharpened, and for travellers on foot to take corresponding precautions, so as to avoid slipping.

No reported case is found in which it has been decided that a way is defective merely because it is slippery, if in all other respects in good order, and properly constructed, and the ice constituting no obstruction except by its smoothness, although in some cases at *nisi prius* it may have been assumed without question. In *Hall* v. *Lowell,* 10 Cush. 260, two conductors from the roofs of two houses came together, and, by reason of their not being tight, let upon the sidewalk water that often froze there in the night, and continued for several weeks together. There was therefore a special cause for the formation of ice at the spot, against which the city might have guarded. A state of facts somewhat similar was shown in *Demond* v. *Boston,* tried in Suffolk at the September session of this court, 1856; at which the doctrine now held was distinctly stated by the present chief justice as the rule adopted by the court. Very similar facts were disclosed in *Kirby* v. *Boylston Market Association,* 14 Gray, 249. In *Shea* v. *Lowell,* 8 Allen, 136, *Payne* v. *Lowell,* 10 Allen, 147, and *Providence* v. *Clapp,* 17 Howard, 161, there was nothing in the cases reported to show the quantity, shape or condition of the ice that constituted the defect, and the question did not arise. In *Johnson* v. *Lowell,* at *nisi prius* in Middlesex April term, 1866, the rule of law which we now recognize was substantially announced.

It may perhaps account for the more frequent attempts within

a recent period to hold towns and cities responsible for ice in the streets, that by-laws have been passed requiring all the snow and ice to be removed from sidewalks by the abutters, or, instead of removal, the sprinkling of sand or ashes upon them. Some misapprehension may have arisen as to the effect of these by-laws, where they exist, upon the general obligation of the towns or cities to keep their ways in proper condition. But, as has already been observed, this obligation is not increased or qualified in any degree, and remains the same as it was before such by-laws as these were authorized or enacted.

*Exceptions overruled.**

---

* The following case, involving a similar question, was argued in Boston in November 1866.