[No. 6609. Decided April 8, 1907.]

SARAH AGNES BULL et al., *Appellants*, v. THE CITY OF SPOKANE, *Respondent.*[1]

MUNICIPAL CORPORATIONS — NEGLIGENCE — DEFECTIVE SIDEWALK — QUESTION FOR JURY. In an action against a city to recover for a fall upon a sidewalk, evidence of the plaintiff that she was on the sidewalk when she fell is sufficient to make a question for the jury as to such fact.

SAME—EVIDENCE OF NEGLIGENCE—SUFFICIENCY. In an action to recover for a fall upon an icy sidewalk, there is sufficient evidence of negligence upon the part of the city, where it appears that the snow and ice had been piled up for four weeks on the sidewalk, which was very slippery, and that people had to take the middle of the road to avoid falling, nothing having been done to remove the snow and ice for about four weeks.

Appeal from a judgment of the superior court for Spokane county, Huncke, J., entered July 3, 1906, dismissing an action for personal injuries sustained by a pedestrian in falling upon a sidewalk, after a trial on the merits before the court and a jury. Reversed.

*Munter & Jesseph, Munter & Lowjoy,* and *S. R. Stern,* for appellants.

*J. M. Geraghty* and *Alex. M. Winston,* for respondent.

ROOT, J.—This action was for damages arising from personal injuries sustained by appellant Sarah Agnes Bull in

[1]Reported in 89 Pac. 555.

falling upon one of respondent's sidewalks. From a judg-
ment of dismissal on plaintiffs' case, this appeal is taken.

It is urged by respondent that the evidence fails to show
that said appellant fell upon the sidewalk, and that it also
fails to show that the ice and snow, which are claimed to have
been the cause of the fall, were in such condition as to con-
stitute negligence on the part of the city. The evidence of
said appellant herself is that she was upon the sidewalk at
the time when she fell. This was sufficient to carry the case
to the jury upon that point. As to the condition of the ice
and snow upon the sidewalk, the following extracts of evi-
dence may be cited: One witness testified:

"Well, it was very icy; about an inch and a half of ice
there, I should say; and then there was snow on top of that
ice, and it was impossible to go up along there even with
rubbers, so we used to take the middle of the road where the
wagons had gone over in going to our meals."

In reference to whether the ice and snow were smooth or
otherwise, Mrs. Bull, being asked if there were any bumps
there, answered: "I didn't know whether there were any
bumps there or not that night. When I fell it seemed all
bumps." "There was nothing but snow and ice on it there,
ice and snow all piled up there." Other portions of the
evidence were as follows:

"Q. Do you know the condition the sidewalk was in, at
that place, on the day Mrs. Bull fell? A. Yes, sir. Q. What
was that condition? A. Icy, slippery, all snow and ice; we
would have to take the middle of the road half the time. . .
Q. How long had that condition existed prior to the day
Mrs. Bull was brought in there? A. Oh, for several weeks,
during cold weather. . . . . Q. Had you during that
time observed any cleaning off of that sidewalk at the place
where this accident occurred? A. No, none whatever, be-
cause my window faces on that sidewalk. I can see it every
day, and there was no cleaning done at all there. . . .
A. It was all very slippery, from the little alley way which
runs on the north side of Brancy Court clear down to River-
side avenue. It was all in the same condition along there,

very slippery with snow and ice.   Q.   Describe it as accurately
as you can, so that the jury may form an idea of the condi-
tion it was in at that time?   A.   Well, it was glassy, icy, I
should say; I noticed it because when myself and wife went
to dinner, instead of going down the sidewalk, after trying
it once or twice, we took the middle of the road, because it
was safer.   .   .   .   Q.   How long had that condition, that
you have just described, existed—the condition of the side-
walk?   A.   I should say two or three or four weeks; I didn't
pay very much attention to it.   Q.   Had you ever noticed
during that time that the sidewalk was cleaned off at all?
A.   Yes, sir, I noticed it was always in the same condition.
Q.   I asked you if you ever noticed it had been cleaned.
A.   No, I never noticed that it was cleaned off.   .   .   .
Q.   Just describe to the jury the exact condition of the side-
walk there at that point, as near as you can.   A.   Well, there
had not been any snow cleaned off of it there during the
winter, and I think there was a path that went down about
through the center of the sidewalk, somewheres near the cen-
ter, a path three or four feet wide, and it was pretty icy;
and I think the sides of the walk, the edges of it had more or
less snow on it, was not so slippery; there had been no snow
taken off of it that I know."

We think this evidence was sufficient to take the case to
the jury, and it was for the latter to say therefrom, under
all the circumstances and the court's instructions, whether
the condition of the street at the time of the accident was
such as to constitute negligence on the part of the city.
Cities cannot be held to a rigid accountability because of their
sidewalks being rendered dangerous from natural accumula-
tions of ice and snow.   Where ice and snow accumulate upon
a sidewalk in the ordinary manner, the city must be allowed
due time to remove the same or to so deal with the conditions
as to render the walks as reasonably safe as could ordinarily
be expected under the circumstances.   But it is a self-evident
fact that where ice and snow are "piled up" on a sidewalk
so as to render it exceedingly slippery it is a dangerous con-
dition; and where that condition amounts to an obstruction
to ordinary travel and is permitted to remain for several

weeks without any effort on the part of the city to remedy it or protect pedestrians therefrom, it is sufficient to charge the city with negligence, in the absence of any reasonable justification being shown. The evidence here is to the effect that the snow and ice was "piled up" on the sidewalk and that it was exceedingly dangerous to walk upon this sidewalk in the condition it was in at the time of this accident, and that said condition was a serious obstruction to ordinary travel and had obtained for several weeks; that Mrs. Bull did not know of its slippery, dangerous, condition; that it was after dark. This evidence was sufficient legally to present the questions to the jury as to whether the city was negligent and as to whether such negligence was the proximate cause of Mrs. Bull's injuries. *Smith v. Spokane*, 16 Wash. 403, 47 Pac. 888; *Calder v. Walla Walla*, 6 Wash. 377, 33 Pac. 1054; *Piper v. Spokane*, 22 Wash. 147, 60 Pac. 138; *Ziegler v. Spokane*, 25 Wash. 439, 65 Pac. 752; *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847.

In justice to the learned judge who tried this case, it is conceded by counsel that, upon the settling of the statement of facts, he announced that, in granting the motion to dismiss and in denying the motion for new trial, he had inadvertently overlooked a material portion of the evidence hereinbefore quoted; that otherwise his rulings would have been different upon those motions.

The judgment of the honorable superior court is reversed, and the cause remanded for a new trial.

HADLEY, C. J., MOUNT, CROW, and DUNBAR, JJ., concur.
FULLERTON, J., dissents.