MARIE FINNANE, Appellee, v. CITY OF PERRY, Appellant.

Municipal corporations: SIDEWALK ACCIDENT: NEGLIGENCE: INSTRUC-TIONS: PREJUDICE. The instruction in an action for a sidewalk injury that plaintiff must recover, if at all, on the ground of the negligence alleged in the original notice, which stated that defendant had permitted the walk to be in a defective condition, in that it was broken, uneven and covered with ice and snow; and that the allegation in the petition that the city had permitted the walk to be improperly constructed, with the surface broken so that it was slippery from melting snow and ice, or from want of proper drainage, constituted a cause of action not to be considered because not commenced within the proper time, was not prejudicial to defendant although plaintiff might have properly complained thereof.

Same: NEGLIGENCE OF CITY: EVIDENCE. In this action for injuries caused by stepping upon an alleged broken and uneven sidewalk, covered with ice and snow, the evidence is reviewed and held sufficient to require submission of defendant's negligence and to support a verdict for plaintiff.

Same. Evidence that ice accumulated on all walks of the city from melting snow during the season in question, even if the walks were well drained, and that it was impossible with ordinary diligence and usual methods to keep any sidewalk free from ice was properly excluded, although it might have been admissible had it been offered with respect to the particular walk in question.

**Same:** REMOVAL OF SNOW AND ICE: DUTY OF CITY: INSTRUCTIONS. A
city is not required to remove all snow and ice from its walks, but
must use ordinary and reasonable care to remove defects arising
out of conditions occurring after snow has fallen. The instruc-
tions regarding the duty of the city to keep its walks in a rea-
sonably safe condition when construed as a whole present the ·
true rule and were not prejudicial in character, nor objectionable
as shifting the burden to defendant to show that the walk in
question was in a safe condition for use.

**Appeal:** MOTION FOR DIRECTED VERDICT: WAIVER. Where a defendant
proceeds to introduce its evidence, after the overruling on a mo-
tion to direct a verdict at the close of plaintiff's case, it cannot
complain of the ruling on appeal.

*Appeal from Dallas District Court.*—HON. LORIN N. HAYS,
Judge.

WEDNESDAY, FEBRUARY 18, 1914.

ACTION at law to recover for injuries sustained by plain-
tiff while passing along and over a sidewalk in defendant city,
which was covered with ice and snow. In addition to a
general denial, defendant pleaded that the action was not
brought in time, and that plaintiff gave no preliminary notice,
as by statute provided. On these issues the case was tried
to a jury, resulting in a verdict and judgment for plaintiff
in the sum of $250, and defendant appeals.—*Affirmed.*

*H. S. Dugan,* for appellant.

*White & Clarke* and *Giddings & Blake,* for appellee.

DEEMER, J.—The accident occurred upon one of the pub-
lic and much frequented, residential streets in the defendant
city on the 13th day of February, 1912, and an original notice
of the suit was served on May 13, 1912. The original petition
was filed on May 14, 1912, and the grounds of negligence
pleaded therein were as follows:

That the defendant permitted said sidewalk to be constructed with the surface thereof sloping so that the same was made slippery by melting snow and ice. That, during the several weeks immediately prior to the injury herein alleged, large quantities of snow and sleet had fallen and banked upon said walk and had partially melted and become packed and frozen in such a manner as to have an uneven surface and to lay in ridges in rounded form so that the said sidewalk was slippery and dangerous to pedestrians. That the defendant was negligent in permitting said sidewalk to be so constructed and in allowing the snow and ice to accumulate from and remain thereon in the dangerous condition hereinbefore described.

Defendant pleaded that the action was barred because not commenced within three months from the time of the accident, and that the original notice was not sufficient to meet the requirements of section 3447, paragraph 1, of the Code of 1897. Demurrer to this answer was sustained. Thereafter, and on November 15, 1912, plaintiff filed an amendment to her petition, claiming additional damages, and at a proper time defendant insisted that this amendment could not be considered. The original notice we have been unable to find in the record; but in its instructions the court said to the jury that the action was commenced in time, although the jury should confine its investigations to the grounds of negligence stated in this notice, which were said to be:

1. Municipal Corporations: sidewalk accident: negligence: instructions: prejudice.

That the defendant had permitted its sidewalk at the point in controversy to become in a defective condition in that the same was broken, uneven, and covered with ice and snow. These allegations in plaintiff's notice must be held to be the charge of negligence against the defendant on which and for which the plaintiff must recover against the defendant, if at all. (The court further instructed.) That as to the other allegations in the plaintiff's petition that the defendant has permitted the sidewalk in question to be improperly constructed with surface thereof broken so that the same was made slippery by melting snow and ice, or from want of

proper drainage, and that by reason of such defective construction, as charged in said petition, you are instructed that such allegation would constitute a ground or cause of action against the defendant, and that the cause of action thereon was not commenced within three months from the happening of the alleged injury, and that the same is now barred. You will therefore, in your further consideration of this case, consider only the act of negligence set forth and charged in said notice, and as the same are heretofore set forth as a basis for a recovery.

Some complaint is made by defendant of these instructions, but the complaint is without merit. The instructions are clear, and the jury could not have been misled thereby. The prejudice, if any, was to the plaintiff, but she is not complaining; and, as the original notice is not in the record, we must assume that the court below properly interpreted it. The plaintiff might well complain of this instruction; but it was evidently nonprejudicial to the defendant.

II. The accident occurred on the south side of Warford street, between Third and Fourth, and about fifteen feet west of Fourth street, and the plaintiff described the condition of the place as follows:

The accident occurred while I was walking west over the sidewalk about half past nine in the forenoon. The walk was covered with a light fall of snow, and the walk was in ridges or bumps covered with ice which was smooth on top. I did not know of the condition of the walk at the time I went upon it. The snow on the walk was between an inch and two inches deep. The walk at the particular place where I fell was uneven. The edge of the walk was pushed up by a tree growing near by, and the walk was·in a slanting position. There was a sloping terrace about three or four feet high on the south side of the walk. The terrace was close to the walk, and there was no level ground between them. I was walking along and slipped backward, which gave my head a jerk, and I fell on my right elbow.

2. SAME: negligence of city: evidence.

Other witnesses testified as follows regarding its condition at or about the time of the accident, and before and after, and we here quote some of their testimony from the record.   One said:

I was along there between the 1st and the 18th of February.   I traveled over the walk twice during that time.   I do not know the exact time, except it was between the 1st and the 18th of February.   There was about two weeks between my trips over this walk, and my last trip was not later than the 18th of February.   The first time I went over the walk I noticed the condition of the walk, and it had snow and ice on it.   At that time I was going east from Third to Fourth street, and the walk was rough in places.   It was rough toward the east end.   It was also slick.   The last time I went over the walk there had been some snow, but it was rough, and the place was slick so it was difficult for me to get over.   On the last time that condition of being rounded up, smooth, and slippery continued as I had seen it before.   I do not know how long that snow and ice had been on the walk.   There was ice on the walk and snow over it.   This condition extended over quite a little strip of the walk just west of Fourth street and on the south side of Warford.   There was more snow on the walk the last time I crossed it than the first time.   It appeared to be thawing.   It was not thawing the first time. The water that thawed out of the snow appeared to stay mostly on the walk.   There was snow on the walk that day. I could not say how much but enough to cover the ice.   The snow was level and had footprints in it.   I could see the ice through the prints.   The ice was slick in some places, but I do not remember what part of the walk that was on.   There was no fresh snow that day.   It might have snowed a little bit the night before, but there was no snow on this day.   In some places the ice was smooth and in others it was not.   The smooth places were where it was kind of raised up where the water ran over it.

Another testified:

Last winter during January and February I frequently passed over the walk on the north side of the Pattee place on

Warford street. I might have passed there as often as once
a day. I am acquainted with the members of the city council
of the city of Perry and know the men who were on the
council last February. Mr. Charles Marckres is a member of
the board. His home is the next place east directly across
the street from the Pattee place. I do not know whether or
not he was in the habit of walking along the south side of
Warford street in going to his home or not. Mr. Rouse is
also a member of the city council. His home is the second
block east and one block south of the Pattee home. I am
acquainted with E. Kelley, who is a member of the city coun-
cil. Mr. Kelley is in the stock business, and I have seen him
driving up and down the street at different times. I remember
about the time the snow commenced to fall in Perry last
winter. I think it was during the holidays and about Christ-
mas time. I know there was snow on the ground Christmas
day. That first snow and the additional snow that fell re-
mained on the ground all winter. Prior to the first fall of
the snow there was ice on the sidewalk. This condition was
pretty general all over the city. I could not say whether
or not there was snow or ice on the sidewalk north of the Pattee
home during the middle of February last winter. The snow
and ice on the lawn and terrace of the Pattee home drains,
when thawed out, to the northwest onto the sidewalk adjacent
to the terrace. There is no gutter or drainage provided for
either side of this walk. The sidewalk slopes toward the west;
that is, is downhill to the west.

And still another gave this evidence:

I live on south side of Warford street. I go up that side
of the street more than I do the other, four or five times a
day during last January and February. I walked up which-
ever side I got started up and stayed on it. I think the snow
commenced falling in December. I think there was snow on
the ground Christmas. Part of that snow stayed on until
spring. The ground was covered continuously. There was
ice on the sidewalk in question last winter, but I don't know
what time. Part of the snow stayed on all winter. The con-
dition of the sidewalk, lawn, and terrace is the same as the
picture shows. The drainage is north onto the sidewalk. Q. On
this sidewalk, this Pattee's sidewalk, there was snow on the

sidewalk? And it was thawing and drained down onto the walk—now what effect would that have on the snow as to making it soft and slushy? A. It would make it wet and slushy. Q. What is the fact as to there being travel over that snow and working it up into ridges and bumps, if you know? A. Make it rough. Q. What is the fact as to the extent or amount of travel back and forth over that sidewalk? A. There was considerable travel over it; I don't know how much. I think it is one of the main thoroughfares, and there are churches near, and the accident happened west of Fourth street, about two blocks from the main street.

Aside from some testimony relating to the nature and extent of plaintiff's injuries, and some other matters not material to the points made for defendant, this is plaintiff's case. Among other things, when introducing its testimony, defendant made the following offer:

3. SAME.

Defendant offers to prove that the conditions existing in the city of Perry last winter—that all sidewalks, even if well drained, that ice accumulated thereon from the water that would melt from the banks of snow along the sidewalk, and that it was impossible with ordinary diligence and the usual methods to keep any sidewalk free from ice. The court rules that such evidence is incompetent. Exception taken to ruling.

The record shows, however, that the city was permitted to prove its efforts to keep the sidewalk in question in repair, and its care with reference thereto. The mayor testified to having inspected the walks of the city during the winter of 1911-12, and that he went over the walk where the accident occurred some time in February, although he could not give the exact date. He further said that he was over the walk, where plaintiff fell, on tours of inspection every two weeks, and was certain that he was over it twice in January and as many times in February. Defendant contends that the court was in error in denying the proffered testimony, claiming that it would show ordinary care on the part of the city, and that

the city could not be held liable for failure to do the impossible. Had the testimony been directed to the particular walk in question, it might have been admissible, but being omnibus in character, and covering all of the sidewalks of the town, we do not think it was either material, relevant, or competent.

The city was not bound to remove all snow and ice; but it was required to use ordinary and reasonable care to remove defects arising out of conditions occurring after the snow had fallen. This point seems to be covered in *Lindsay v. City of Des Moines,* 68 Iowa, 368; *Ford v. City of Des Moines,* 106 Iowa, 94; *Huston v. City,* 101 Iowa, 33.

4. SAME: removal of snow and ice: duty of city: instructions.

III. The trial court gave the following, among other, instructions:

(9) Cities and towns are not insurers of the safety of travelers upon their streets and sidewalks. It is their duty, however, and it was the duty of the defendant, to have kept its walk in a reasonably safe condition for persons desiring to pass over them, to pass in safety, by the use of due care and prudence on the part of said pedestrians in passing over said walk, and if the plaintiff has shown by a preponderance of evidence, as herein defined to you, that while she was exercising ordinary care and prudence, and without any negligence on her part contributing to the injuries complained of, by reason of the negligence of the defendant, as charged in her petition, and as submitted to you herein by the court, she was injured by reason of the defendant permitting snow and ice to be and remain on the walk referred to in the plaintiff's petition in such a rough, rounded, and uneven condition as to render such walk dangerous to persons passing over the same in the exercise of ordinary care and prudence, then in such a case the defendant would be liable to the plaintiff for whatever injury the evidence has shown she has sustained by reason thereof, providing that you further find that at the time and prior to the time of the said injury the defendant had knowledge of such defect complained of or by the exercise of ordinary care and prudence it should have known of such defect in time to have remedied the same and thereby prevented the injury.

(10)  The fact, if it be a fact, that ice and snow has been permitted to accumulate on the walk of a city from natural causes and may have been permitted by the city to remain thereon for a considerable length of time, and though slippery, because of the smoothness of the surface, does not constitute such a defect alone for which a city may be held responsible for an injury resulting to a pedestrian thereon. It is only where such snow and ice are allowed to remain upon the walk until by its being trampled upon by pedestrians, freezing and thawing, or from other causes the surface of such snow and ice becomes rough, ridged, rounded in such a manner that a person in the exercise of ordinary care could not pass over it without danger of falling, that the defects are such as to render the city liable. There is no duty resting on the city to remove snow and ice from the sidewalk so long as the snow and ice remain unchanged by the interference of man, or from other artificial causes by which the snow or ice become ridged, uneven, or is made to assume some other form or present some other danger than it would have presented solely from natural causes. And if you believe from the evidence produced upon the trial hereof that, at the time plaintiff fell upon the sidewalk in question, the sidewalk was covered with snow and ice, and that the same was unbroken and smooth and even as it had fallen upon said sidewalk, then the plaintiff would not be entitled to recover in this action, and you should find for the defendant.

The first of these, No. 9, is complained of, because in the first paragraph the jury was instructed that it was defendant's duty to keep the walk in a reasonably safe condition. If this phrase stood alone, doubtless the instruction would be erroneous; but, taken as a whole, it presents the true rule, and it was not prejudicial in character. *Lindsay v. City,* 74 Iowa, 111.

Instruction No. 10 does not, as defendant contends, shift the burden upon it of showing that the snow and ice were unbroken, smooth, and even. The instruction has no reference to the burden of the proof. That matter was covered by other instructions which are not quoted.

Instructions stating the issues are complained of, but

these complaints are without merit. They succinctly state the issues, and, even if not as concise as they might have been, the other instructions clearly presented the very matters to be decided by the jury.

IV. Defendant filed a motion at the close of plaintiff's testimony for a directed verdict. This was overruled, and complaint is made of the ruling. As the city did not stand on the ruling but proceeded to introduce its testimony, it cannot now complain of the ruling. *Andreas v. Hinson,* 157 Iowa, 43; *Frum v. Keeny,* 109 Iowa, 393, and cases cited. Again it is said the verdict is without support in the evidence. It must be conceded that the testimony is not strong; but we think there was enough of it to justify the submission of the case to a jury, and with its verdict we should not interfere.

5. APPEAL : motion for directed verdict : waiver.

No prejudicial error appears, and the judgment must be, and it is, *Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.