FLORA PARKS, Appellee, v. CITY OF DES MOINES, Appellant.

MUNICIPAL CORPORATIONS: Streets—Snow and Ice. Testimony
1    tending to show that snow on a public street had, for some four days, been passing through a gradual change from a natural state to a state of roughness presents a jury question on the issue as to the city's negligence.

MUNICIPAL CORPORATIONS: Streets—Defects—Constructive No-
2    tice. The *"length of time"* which a defect in a public street has existed is not the sole criterion for determining whether the municipality has had constructive notice of such defect. The *obviousness* and *public notoriety* of the defect are very controlling elements.

DE GRAFF, J., dissents on the particular facts of the instant case.

TRIAL: Instructions—Inadvertent Use of Terms. The manifestly in-
3    advertent use of terms in an instruction will not necessarily constitute reversible error. So held where the court employed the term "discretely," instead of the term "discreetly."

APPEAL AND ERROR: Waiver—Gambling on Answer. A party may
4    not withhold his objection until he discovers that the answer is unfavorable.

APPEAL AND ERROR: Waiver—Failure to Object. A party may not
5    allow testimony to be received without objection, or be a party to its reception, and thereafter base error thereon.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

JANUARY 20, 1923.

REHEARING DENIED MAY 8, 1923.

DEFENDANT appeals from a verdict and judgment in favor of plaintiff of $4,500. Plaintiff charges that defendant was negli-

gent in permitting accumulations of ice and snow on its sidewalk, from which she fell and was injured. Defendant appeals.— *Affirmed.*

*John J. Halloran, Reson S. Jones, Chauncey A. Weaver,* and *Paul Hewitt,* for appellant.

*Sampson & Dillon,* for appellee.

PRESTON, C. J.—Plaintiff is 65 years of age. The accident caused an impacted fracture of the neck of the femur, between the head of the femur and the femur itself; fragments of the broken bone were crushed together. She was in the hospital about three months, with sandbags placed along her limb. She suffered greatly. It was about six months before she was able to be up, and to use crutches, and about seven months before she was able to be out. One limb is shorter than the other. No question is made but that her injuries are serious and permanent. No question is made as to the amount of the recovery. A number of witnesses were introduced on the part of plaintiff, to show the icy condition of the walk, and the length of time it had existed, weather conditions, and so on. No witnesses were introduced by defendant to contradict the plaintiff's testimony. But two witnesses were used for the defendant,—one a photographer, who identified a photograph of the premises, taken some time thereafter, to show the general situation, the sidewalk, embankment adjacent thereto, the stores and other buildings near by, and the like. The other witness testified briefly in regard to the bank and its height and slope in front of his property, where plaintiff was hurt; that it varies from two to six feet,—it is higher towards the west. His house faces north, and the sidewalk is next to the bank on the south side of the street. Appellant concedes that there was no dispute in the evidence, and that, therefore, it was a question of law for the court.

1. MUNICIPAL CORPORATIONS: streets: snow and ice.

Two main questions are relied upon by appellant for a reversal: First, that the evidence does not show that there was any negligence on the part of defendant which proximately caused plaintiff's injury, for that the condition of the walk

was from natural causes, which the defendant was powerless to prevent and powerless to remedy. Second, that the length of time was so short that defendant cannot be held to have had constructive notice of the dangerous condition. The place where plaintiff fell was on Park Avenue, in Des Moines, the principal thoroughfare running east and west in that part of the city. It is much traveled. West Ninth Street is the principal street running north and south. The intersection of the two streets is a short distance—a block or so—east of where plaintiff was hurt. Park Avenue is the only street cut clear through in that part of the city. The people living east of Tenth Street have to go over Park Avenue to get to the street car line. There is but one sidewalk on Park Avenue, between Ninth Street and the car line. The place where plaintiff fell was on the sidewalk on the south side of Park Avenue. There is no walk on the opposite side of the street. At Ninth and Park there is a business center, including a number of stores, a branch post office, schoolhouses, and church. On Friday, December 17, 1920, at about 3 or 3:30 P. M., plaintiff started to visit some of her neighbors on Park Avenue between Ninth Street and the 1300 block on Park Avenue. She was going west. The sidewalk slopes toward the west. The walk, or parts of it, to the east of the lot where she fell, had been cleared off. She fell and was hurt at about 4 P. M. of that date. No snow fell on the 17th, and no snow to speak of had fallen before the 13th. On the Monday before,— that is, on December 13th,—there was a heavy fall of snow. It commenced snowing about 1 o'clock, and at 7 o'clock that evening the snow was substantially 6 inches deep. It had been tramped down, and perhaps had thawed some, so that it was about 4½ inches deep on Tuesday, 4 inches Wednesday, 3 inches Thursday, and 2½ inches Friday. Between Monday and Friday there was some change of temperature, the highest temperature being 46, or 14 above freezing, and the lowest .19, or 13 below freezing. For about 3 hours one day during this period, it was warm enough to thaw, so that the snow was softer; but, as said, it remained 2½ inches thick on Friday. On Thursday, the 16th, the thermometer was highest, and the snow thawed some a part of that day, then froze again. The highest temperature on Tuesday and Wednesday was 40, and the lowest 28. Friday was the

coldest day. On each of these days, from Monday to and including Friday, it was freezing a part of each day.

It is argued by appellant that these changes were radical. The thought is that it was so warm that the snow became slushy. There is some evidence tending to show that the thawing was enough so that footprints would show; but it must be remembered that the snow was hard packed from tramping of pedestrians, and that the thawing during the day was for a short time. Time and other elements are necessary to be considered on the question as to the extent of the thawing. *Rose v. City of Fort Dodge,* 180 Iowa 331. The defendant brought out, on cross-examination of plaintiff's witnesses, that sometimes water from thawing snow would run down the bank and over the walk. It is not clear from the evidence whether such was the fact at the time and place in question, or that this was the cause of the icy and dangerous condition of the walk where plaintiff fell. It may have had a tendency in that direction, and may, to some extent, have been the cause.

It is contended by appellant that not more than one or two days had elapsed from the time the walk became dangerous, if it was so, before plaintiff fell. But the evidence shows that, from a time soon after the snow fell, for substantially four days, because of the travel and tramping over the snow, and the thawing and freezing, it had become packed and icy, and was rough, rounded, uneven, and in a condition substantially different from the way the snow fell naturally. A jury could have found from the evidence that during this entire time such was the condition, though it may have changed somewhat from day to day. They could have found that such was the condition at the time plaintiff fell. The evidence is by no means conclusive that the condition of the walk which resulted in plaintiff's fall was caused by a thaw within a day or two prior thereto which materially changed the rough and dangerous condition, which, as said, had existed for at least four days. At least, the question was for the jury. The cases cited by appellant are largely decisions by courts in other states.

1. Without entering into a detailed discussion of the evidence or a rediscussion of the principles of law applicable to such a situation, we think the evidence brings the case well

within the rule as laid down in our cases, and that the condition of the walk was such as to constitute actionable negligence which was the proximate cause of plaintiff's injury. *Griffin v. City of Marion,* 163 Iowa 435; *Templin v. Incorporated City of Boone,* 127 Iowa 91; *Gregg v. Town of Springville,* 188 Iowa 239; *Rose v. City of Fort Dodge,* supra; *De Wall v. City of Sioux City,* 181 Iowa 333; *Allen v. City of Fort Dodge,* 183 Iowa 818; *Finnane v. City of Perry,* 164 Iowa 171; 13 A. L. R. 17, 29, and note. Other cases might be cited, but the rule is well settled in this state, and is as announced in the foregoing cases.

It was pointed out in some of the earlier cases that there was a conflict in the authorities from other jurisdictions in regard to liability for accumulations of snow and ice. The rule was adopted and followed, as shown in the cases above cited. In the last case on the subject, the *Gregg* case, supra, we said:

"It is well settled by our decisions that: 'No such duty [with respect to such accumulations] exists while the snow and ice remain unchanged by the interference of man or other artificial cause. That duty arises only when, by reason of such interferences with natural conditions, the snow or ice becomes rigid [ridged] or rounded or uneven, or is made to assume some other form or present some other danger than would result solely from natural causes' " (citing cases).

Another case, *Tobin v. City of Waterloo,* 131 Iowa 75, restates the rule in more specific terms thus:

"Ice and snow accumulated on the walk from natural causes, though slippery because of their smooth surface, is not a defect for which the city may be held responsible. It is only when such ice and snow are allowed to remain upon the walk until, by the tramping of pedestrians, freezing and thawing, or other causes, the surface becomes rough, rigid [ridged], rounded, or slanting, so that a person in the exercise of ordinary care cannot pass over it without danger of falling, that the defect is such as to render the city liable."

The other cases are to the same effect. The condition described was proved by the testimony in this case, and the jury could have so found. Witnesses testify specifically that this condition had existed for substantially four days. The evidence fully meets the requirements of the law, as laid down in all

our cases. In this case we are but following our own precedents. It is not our purpose to extend or broaden the rule.

2.     As indicated, there is but little evidence in regard to the melting of snow on the bank and its running over the walk, and that was drawn out by defendant. If this had anything to do with the icy condition, it does not necessarily defeat a recovery. It would be but a contributing cause. There is no evidence that shows affirmatively that the accident could not have happened if the walk had not been rough and uneven, if the ice was formed by water running down the embankment. This was a question for the jury.

3.     Appellant seems to argue and rely most on the question as to whether the evidence was such as to justify the submission to the jury of the question as to whether the city had constructive notice, and the jury's finding that it had. The 2. MUNICIPAL CORPORATIONS: streets: defects: constructive notice. city must have had either actual or constructive notice of the defect, and opportunity to repair the same. On the question as to the length of time, *Cooper v. City of Oelwein,* 145 Iowa 181, White on Negligence of Municipal Corporations, Section 267, *Beirness v. City of Missouri Valley,* 162 Iowa 720, and other cases, are cited. In the *Beirness* case, it was shown by the evidence that, from one to three days previous to the injury, there had been a slight thaw, followed by freezing, causing the icy surface of the walk where plaintiff fell; and it was held that this was not a sufficient lapse of time to charge the city with notice. But the evidence in that case showed that the ice upon which she slipped covered a surface about the size of a hand, described as just a little spot of ice, and that there was the appearance of a sleety condition. Under such circumstances, it was held that notice of the particular icy condition which caused her injury should not be imputed to the city. The facts of that case are not at all applicable here. All the circumstances must be considered. Much depends upon the character of the defect, and upon the circumstances and surroundings. *Town of Monticello v. Kennard,* 7 Ind. App. 135 (34 N. E. 454); *Reed v. City of Mexico,* 101 Mo. App. 155 (76 S. W. 53); *Miller v. Town of Canton,* 112 Mo. App. 322 (87 S. W. 96). Each case must depend upon the facts and circumstances attending it. Generally it is a question

for the jury. There is no fixed or definite rule as to what length
of time a defect or obstruction must have existed, to furnish
notice. 20 L. R. A. (N. S.) 708; *Cutter v. City of Des Moines,*
137 Iowa 643; *Smith v. City of Sioux City,* 119 Iowa 50; *Garnetz
v. City of Carroll,* 136 Iowa 569; *Hodges v. City of Waterloo,*
109 Iowa 444. So far as length of time is concerned, what
would be notice in one case might not be in another. That is to
say, an obvious defect would impart notice, of course, more
readily than one less perceptible and partially hidden, and
readily overlooked by the authorities and the traveler. *Town of
Monticello v. Kennard,* supra; *Reed v. City of Mexico,* supra.
Perhaps other circumstances might be referred to, as to the
obviousness of the condition of the walk, as bearing upon the
question of notice. In this case, the defect was not something
that happened suddenly, as the dropping of a barrel stave from
a loaded wagon, or something thrown or left in the street for a
short time. Many cases might be cited wherein it has been held
that the length of time was or was not sufficient to impart notice.
Ten or fifteen minutes would not be enough (*Sikes v. Town of
Manchester,* 59 Iowa 65); nor three hours, where rock had been
dumped in the street (*Hazelrigg v. City of Frankfort,* [Ky.]
92 S. W. 584); nor five hours (*Klatt v. City of Milwaukee,* 53
Wis. 196). On the other hand, a city will be held to have con-
structive notice of a defect in a sidewalk where, as here, the
defect was a matter of public notoriety in the neighborhood.
*City of Evansville v. Wilter,* 86 Ind. 414; *Snyder v. City of
Albion,* 113 Mich. 275; *Varnham v. City of Council Bluffs,* 52
Iowa 698. From morning until noon was held sufficient, under
the circumstances of the case, in *Harriman v. City of Boston,*
114 Mass. 241. Four days sufficient—excavation in street. *City
of Fort Wayne v. Duryee,* 9 Ind. App. 620. See 20 L. R. A. (N.
S.) 708, note; 13 A. L. R. 45, note. In *Buffalo v. City of Des
Moines,* 193 Iowa 194, it appears that the condition had existed
for six or seven days, and we said that a very much shorter
time might well be held sufficient, under the admitted or proved
circumstances. In the following cases, time varying from four
or five days up was sufficient to make the question of notice a
question for the jury. *De Wall v. City of Sioux City,* supra;
*Hodges v. City of Waterloo,* supra; *Thomas v. Town of Brook-*

*lyn,* 58 Iowa 438; *Huston v. City of Council Bluffs,* 101 Iowa 33. We are of opinion that, under the entire record in this case, the court could not say, as a matter of law, that the evidence tending to show constructive notice was not sufficient; but, on the contrary, it was a question for the jury as to whether, under all the circumstances and length of time, the city had constructive notice, and time to remedy the defect.

4.    The question of the alleged contributory negligence of the plaintiff in going on the walk was for the jury. *De Wall v. City of Sioux City,* 181 Iowa 333, 336; *Travers v. City of Emmetsburg,* 190 Iowa 717; *Gregg v. Town of Springville,* supra.

5.    In the instruction .on the measure of damages, after stating the different elements for which recovery might be had, if the jury should so find, the court said:

3. TRIAL: instructions: inadvertent use of terms.     "In this connection, the law has not established any fixed rule for determining these amounts, but that is left to your judgment; and in fixing these amounts, you will do so fairly, honestly, and *discretely,* and allow such sum and only such sum as you may conclude she is entitled to recover, after considering fully and fairly all the facts and circumstances in the case."

It is thought by appellant that the jury were misled by the use of the word "discretely." Doubtless the court meant "discreetly,"—with discernment, prudently, judiciously. In the connection in which the word was used, we have no doubt that the jury so considered it. The court or stenographer may have inadvertently misspelled the word intended. Counsel state that they did not themselves know the meaning of "discretely" until after the court had read the instructions, when they looked in the dictionary and found that it meant "separately" and "disjunctively." It is not at all probable that the jury gave the word any such meaning. The argument is that the word as used is entirely foreign to the subject-matter under consideration in the instruction, and that it was misleading and prejudicial. Verbal inaccuracy in instructions, where the jury could not have been misled, is not ground for reversal. *Brown v. West Riverside Coal Co.,* 143 Iowa 662. We are very clear that there is no prejudicial error at this point.

6.    Finally, it is contended by appellant that, under the

issues and under the law, the trial court erred in permitting the witness Canfield to testify concerning the bad condition of the

4. APPEAL AND ERROR: waiver: gambling on answer.

walk at other times than those specifically alleged. The record is: Witness testified that he heard of the accident to plaintiff on the following day after it happened, and says:

"As I recall the condition of the walk at that time, it was in a rough condition. * * * Q. What would you say in reference to the fact as to whether or not snow and ice was generally permitted to accumulate on that walk? A. It was. Q. At other times? A. It was.

"Mr. Weaver: · I object to the answer, and ask to have it stricken, as incompetent under the issues, there being no allegation of anything else except what existed between the 13th and 17th of December."

The court at first sustained the motion, and later changed his ruling. It will be observed that there was no objection to the questions until the answers were in. It was just as apparent when the questions were asked, as when they were answered, that the evidence was incompetent, if it was so. The objection was, therefore, not timely, and the court could have overruled it on that ground. If we notice this evidence closely, it will be seen that the witness at first had referred to the day of the accident, or perhaps the day after, when he saw the walk. The expression "other times" is somewhat indefinite. It may have been two or three days prior to the 17th. It may be that it referred to a time prior to the 13th; but it does not so appear.

5. APPEAL AND ERROR: waiver: failure to object.

Furthermore, after the court had sustained defendant's objection to the Canfield evidence, and before the court had changed his ruling, similar evidence went in without objection. Witness Doctor Wadding testified:

"In my visiting I have been over this walk a good deal. Most all winter when there was ice, usually ice was on the walk there."

The matter was gone into in further detail by defendant on cross-examination, and without objection. He testifies:

"I have been walking that street for three years. I remember it is rather a bad street in the wintertime. The reason I

remember is because I usually would walk off of the sidewalk.
There is a high bank on the south side of the walk, and in the
wintertime there is so much ice and snow there usually that,
when I would go along going west, I would step off the sidewalk.
Q.  Were you along there when it was thawing?  A.  I think
so.  Q.  What becomes of the melted snow on the bank?  A.  It
runs down across the walk onto the street.''

It would seem that this evidence is even broader than that
of Canfield, now complained of, for that the inference from this
testimony is that it was the usual condition, and that witness
had been over it for three years.  The latter part of the evi-
dence just referred to, as to the melting of snow and its running
across the walk, was brought out by defendant, doubtless on the
theory that the city would not be liable for water from melted
snow flowing across the walk.  But we have seen that the fact
that there were two causes does not necessarily excuse the city.

Counsel upon either side refer to *Hanousek v. City of Mar-
shalltown,* 130 Iowa 550, and *Wilberding v. City of Dubuque,*
111 Iowa 484.  In the *Wilberding* case, the issue involved the
question of the defective condition of a plank walk for some
distance along where an accident had taken place.  In the
*Hanousek* case, water had been poured out through a pipe, and
across a street, which condition had existed for a considerable
time.

It is thought by appellant that these cases do not apply
here.  This may be so, especially on the question of notice; but
we think that, in view of the record we have set out, appellant
is in no position to complain, and that there is no prejudice.

As said, appellant contends that such an issue was not con-
tained in the pleadings.  It is not so clear that this is the fact.
The icy condition may have been caused in part by the water
from melted snow which flowed over the walk.  Though, as said,
there is but little evidence of this, that seems to have been ap-
pellant's theory, and it brought out evidence bearing on that
question.  The petition, which was not in any manner attacked,
recites:

''That, about December 17th, and for days prior thereto,
the sidewalk * * * was allowed to become dangerous and unsafe
to persons lawfully traveling over the same, because defendant

did negligently permit snow and ice to accumulate on said sidewalk, and allow the same to become and remain there until the same became caked and packed by travel, and carried by pedestrians, so that the surface of said frozen snow and ice was rough, rounded, ridged, slippery, uneven, and dangerous, by reason of said ridges, elevations, humped knolls, and hillocks of ice and snow * * * and plaintiff was violently precipitated upon the same. * * * That, for a long time prior to the injury, defendant negligently permitted said sidewalk to remain covered with ice and snow, as before alleged,'' etc.

It is unnecessary to discuss the pleadings further, since no complaint is made by appellant thereof, other than the reference thereto in the objection to evidence; nor is it necessary to discuss Instruction No. 5 on that subject, since the instruction is not complained of. We think there was no error at this point.

No prejudicial error appearing in the record, the judgment of the district court is—*Affirmed.*

WEAVER, EVANS, and ARTHUR, JJ., concur.

STEVENS and FAVILLE, JJ., concur in the result.

DE GRAFF, J., dissents.

DE GRAFF, J. (dissenting). I cannot concur in the conclusion announced in the majority opinion. A municipality is not an insurer as to the condition of its sidewalks in relation to snow and ice. Under the facts in the instant case the controlling question is one of law and it is a question for the court to decide. The motion for a directed verdict on behalf of the defendant city at the conclusion of all the testimony should have been sustained. This statement is predicated on the record before us. There is no evidence to establish either actual or constructive notice on the part of the city as to the defect which is alleged to have been the proximate cause of the injury. No actual notice or knowledge having been proved the cause must rest on constructive notice which necessarily involves the element of time. If it may be said that sufficient time did not elapse between the formation of the alleged defect on the walk in controversy and the date of the accident to place the defendant

city on inquiry or to allow a reasonable opportunity to remedy the defect, then it may be said that the city is not bound by constructive notice, and therefore not liable. It is the dangerous or defective condition of the walk to which the constructive notice relates, and not a condition which affords no danger to a pedestrian on the sidewalk.

There is no dispute as to the facts bearing upon this proposition. The record shows one of those sudden transformations in weather or climatic conditions of which an Iowa court may well take judicial notice. A fairly warm autumn day is suddenly changed into a freezing winter's evening by an outburst of elemental fury. Our cities are officered and managed by human agencies which are subject to finite limitations. No court should hold a municipality liable for the failure in doing the impossible. The geography as well as the topography of the situation must be considered in connection with climatic conditions. The defendant city covers an area of nearly nine miles square. It has a population of 138,000 or more. Clearly our law does not contemplate that the defendant city shall maintain a street cleaning force which shall be equal to any emergency ready to march forth "terrible as an army with banners" to bring order out of chaos which the forces of nature have accomplished in a day or a night. The accident in question occurred on one of the outlying streets of the city of Des Moines and this fact has a bearing on the doctrine of constructive notice.

Before entering upon a discussion of the legal principle involved, let us briefly note the facts upon which constructive notice in the case at bar must be bottomed.

Beginning with Monday December 13, 1920 it is shown that on the morning of said day it rained, which changed into a sleet about noon, and by nightfall mother earth was covered with a blanket of snow 5.8 inches deep. Any court should be willing to concede that 24 hours should elapse under such circumstances for the defendant city to attempt the Herculean task of clearing its streets and it should also be conceded that its first attempt should be confined to looking after the streets and main thoroughfares in the commercial and retail districts. There is an underlying reason for this other than the reason just stated. Under an ordinance of the defendant city, residence property

owners are obligated to remove snow from the sidewalks contiguous to their premises and the city has a right to presume that the obligation thus imposed will be observed. The sidewalk upon which the accident in question happened was in front of a residence lot far remote from the heart of the defendant city.

What further happened in climatic conditions immediately after December 13th? The accident happened on Friday December 17th. Immediately following the fall of snow above mentioned and the date of the accident there were frequent and radical changes of temperature. The snow depth decreased from 5.8 inches to 2.4 inches on Friday melting some on each intervening day. The temperature ranged from 46 or 14 degrees above freezing to 19 or 13 degrees below. On Thursday the day preceding the accident the thermometer indicated a maximum of 46 and a minimum of 26 which gives a mean temperature of 36. By reason of these rapid changes the snow melted, froze slightly and melted again. It will be observed also that the lot adjoining the sidewalk had a high bank and a great portion of the water resulting from the melting of the snow on the lot found its way to the sidewalk causing the slush on the sidewalk. Plaintiff fell on the afternoon of the 17th.

On the evening before the accident the sidewalk was slushy. "It was a condition then of slush" late in the afternoon. Plaintiff herself testified that she had no complaint of the street conditions in the vicinity of the accident except at the spot where the accident happened. The material facts in this case have to do with the decisive thaw of Thursday and the equally decisive freeze on Friday. The effect of the travel, as is said in *Beirness v. City of Missouri Valley*, 162 Iowa 720, along the sidewalk had been to create ridges or uneven conditions raised by the imprint and pressure of feet in the snow followed by freezing which made the raised places more or less solid. In that case the accident happened on Wednesday about 8:30 o'clock A. M. On the preceding Sunday and Monday there had been a fall of snow from two to five inches. Following the fall of snow there had been a thaw sufficient to remove some but not all of the snow from the walks. This court said, "We do not find in the evidence that which would permit us or war-

rant a jury in the conclusion that the particular icy condition at the place of the accident had existed for such time as charged the city with notice of it.''

These words are apt and appropriate under the quite similar facts in the instant case. No reasonable opportunity was afforded to the defendant city to deal with the alleged defect. Under the facts here 24 hours had not elapsed. Is a city to be held responsible on account of the changes in the weather? Within a brief period we find rain, snow, moderate temperatures, ascending and descending temperatures, melting snow, water, slush and ice.

The natural effect of such conditions is quite apparent. Had the city permitted the snow to accumulate without removal for a long period of time a different rule would prevail. It must be borne in mind also that the lot abutting the sidewalk in question was high and that the snow on the lot melted and the waters flowed upon the walk. The topography must be kept in mind in fixing the liability of a city under such circumstances and but a few days in the calendar of this case account for all the physical changes, none of which except the freezing of the melting snow and slush within 24 hours of the accident can in any legal sense be within the definition of proximate cause.

In *Kortlang v. City of Mt. Vernon*, 129 App. Div. 535 (114 N. Y. Supp. 252) it is pertinently said: ''Whatever may have been the duty of the city in respect to old snow and ice which had accumulated, I do not think it was negligence upon the part of the city to allow the newly formed ice, created under such circumstances within three or four days of the accident, to remain. * * * In the growth and development of cities like the defendant, the presence of vacant lots is absolutely essential; and in a hilly district, * * * it is sometimes impossible, until the lot has actually been built upon, to accomplish a satisfactory relationship between the level of the ground and the level of the street or sidewalk, unless, at considerable cost in each case, the city compels the owner to rectify the grade, or he does so voluntarily himself.''

The case of *Vonkey v. City of St. Louis*, 219 Mo. 37 is also in point on the facts and on the law. The accident occurred on Thursday. On the preceding Sunday there was a fall of 4 or

5 inches of snow. The day before the accident it rained and the snow melted somewhat. Then came a freeze. The usual description that "the roughness in the snow and ice occasioned by the footprints of travelers" is found in this case. From a nonsuit plaintiff appealed. In affirming the decision of the trial court it is said: "Under the facts, the city was not liable, and for several reasons: (a) The city is not liable because the injury was occasioned by a sudden freeze the night before the injury at noon of the next day. No notice is brought home to the city, and one-half day's time is not such as would permit the presumption of knowledge by the exercise of ordinary care. By the evidence it appears that whilst there was snow and slush on the sidewalk the day before the accident, yet it was safe for travel, and, if unsafe at the time of the accident, it was by reason of the sudden freeze of the night before, and not otherwise. * * * (b) The evidence shows a general condition to have existed in the city. Three or four days prior, there was a general snow 5 or 6 inches deep. The day before, there was a rain rendering the sidewalks sloppy and slushy. The night before, there was a general freeze, rendering the sidewalks slippery in places, and slick and uneven (by reason of footprints) in other places. Under such conditions, there can be no liability upon the part of the city."

Another case quite similar on the facts and the law is *Harrington v. City of Buffalo,* 121 N. Y. 147 (24 N. E. 186). It is said: "The evidence established the fact that for four days previous to the accident the weather had been warm, causing the snow and ice on the walk to thaw and become soft, wet and sloppy. On the night previous to the accident, the weather suddenly became colder, and the snow and slush in the street froze hard, forming ice, and leaving footprints made during the previous sloppy weather plainly visible in the frozen deposit. In some places, the owners of property adjoining the walk had cleaned off the snow, but at the place of the accident, it had not for some weeks been entirely removed. Much of the snow falling during that time had passed off through the natural effect of the elements upon it, but the portion referred to was what remained of a much larger accumulation. The walk, as thus shown, presented no unusual appearance for cities in our un-

certain and inclement climate, and caused no more objectionable obstacle to safe passage than frequently exists in cities and villages during the cold season. Whatever might have been its condition, so far as danger was to be apprehended, it arose solely from its frozen and slippery condition, and that, as we have seen, was caused by the freezing of the night before the accident. * * * It was essential to the maintenance of this action that some breach of duty on the part of the defendant should have been proved, occurring prior to the happening of the accident, which was the cause of the alleged injury. We are of the opinion that the case made did not establish the existence of this essential fact. The proof fails to show that there was any dangerous or unusual obstruction to travel arising from snow or ice in the street, or even if there was, that any such lapse of time had intervened between the period of its creation and the occurrence of the accident as afforded a presumption of knowledge in the municipality of its condition, or opportunity to remove the obstacle after notice was received. The duty resting upon municipal corporations to remove accumulations of ice and snow as it falls from time to time upon our streets is a qualified one, and becomes imperative · only when dangerous formations or obstacles have been created and notice of their existence has been received by the corporation." See also *Armstrong v. City of Monett*, (Mo.) 228 S. W. 771 decided March 5, 1921. This case is on all fours with the case at bar.

The burden was on the plaintiff to prove that the injury was caused by some defect in the walk because of the defendant's neglect, and it must be further established by a fair preponderance that the defendant had either actual or constructive notice of such defect and a reasonable opportunity to repair the same. *Cooper v. City of Oelwein*, 145 Iowa 181; *Tobin v. City of Waterloo*, 131 Iowa 75.

It is a general rule in all jurisdictions that a municipality must have reasonable time to perform a duty of this character imposed by law. *Smith v. City of Chicago*, 38 Fed. 388; *Landolt v. City of Norwich*, 37 Conn. 615; *Blakeley v. City of Troy*, 18 Hun (N. Y.) 167; *Stanton v. City of Springfield*, 94 Mass. 566; *Bull v. City of Spokane* 46 Wash. 237; *Village of Leipsic v.*

*Gerdeman,* 68 Ohio 1; *Hyer v. City of Janesville,* 101 Wis. 371; *Corey v. City of Ann Arbor,* 124 Mich. 134.

It is only when snow or ice are permitted to remain upon a walk until by trampling, freezing and thawing that the surface has become rough, uneven, and rigid that a person in the exercise of ordinary care cannot pass over without danger of slipping and falling that the liability of a city attaches. *Dempsey v. City of Dubuque,* 150 Iowa 260.

Each case must be determined by the circumstances in each particular case. *Kittredge v. City of Cincinnati,* 2 Ohio N. P. (N. S.) 6. The surface of the walk in the case at bar is unmistakenly shown to have been created by weather conditions of two successive days, and on the second of which the accident occurred. It may also be said that much of the water on the walk was caused by melting snow from the lot abutting the place of the accident. The principle is well settled that a city is not liable where the injury was a concurrent result of two causes, for one of which the city is responsible, and for the other it is not responsible, unless the injury would not have been sustained but for the cause for which the city is responsible. See White's Negligence of Municipal Corporations, Section 517.

The primary reason, however, for nonliability in the instant case is the absence of proof of any actual notice, and the facts and circumstances do not justify the application of the doctrine of constructive notice. The defendant's motion for directed verdict should have been sustained. I would reverse.